**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

THOROBRED, INC.,                                                                                                              PLAINTIFFS
d/b/a Thorobred Lounge;
DANNY'S INC.,
d/b/a Thorobred Lounge II;
GOLD COAST, INC.
d/b/a Thorobred Lounge III;
HAYES ENTERTAINMENT, INC.,
d/b/a Thorobred Lounge IV;
TEDDY'S INC.,
d/b/a Thorobred Lounge V;
RIVERVIEW ENTERTAINMENT, INC.,
d/b/a Thorobred Lounge VI;
AND
BY-PASS, INC.,
d/b/a By-Pass Liquors

V.                                                                                                                   NO. 3:04CV-193-JDM

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT,
WILLIAM P. SCHRECK,
AND
ROBERT WHITE                                                                              DEFENDANTS

**MEMORANDUM OPINION**

The adult entertainment lounge and liquor store collection of enterprises owned by Harry Hayes (collectively, the "Thorobred Lounges") has instituted an action for injunctive and declaratory relief against the Louisville/Jefferson County Metro Government, its Director of Inspections, Permits and Licenses, and its Chief of Police. The Thorobred Lounges seek to have certain state statutes and one local ordinance pertaining to the inspection of holders of liquor licenses to be declared unconstitutional and, consequently, to enjoin the defendants from enforcing them. To that end, they have filed a motion for summary judgment (docket no. 13).

The defendants have responded and filed a cross-motion of their own (docket nos. 17/18).  After considering the arguments presented by the parties in light of the applicable case law, the court finds the arguments of the Thorobred Lounges to be generally well taken.[1]  LOUISVILLE CODE OF ORDINANCES § 113.22(A) does not pass constitutional muster and, absent revisions necessary to make the County's inspection program an adequate substitute for a warrant by carefully limiting the inspection provisions in terms of time and scope, it should not be enforced.

## I.

This matter pertains to the combination of state statutes and local ordinances that permit certain duly appointed county administrators, and their investigators, to inspect any premises where alcoholic beverages are manufactured, sold, stored or otherwise trafficked in, without first obtaining a warrant.  The Commonwealth of Kentucky has a State Alcoholic Beverage Control Board, which has among its functions, powers, and duties the promulgation of reasonable administrative regulations governing procedures relative to applications for alcoholic beverage licenses and the supervision and control of the use, manufacture, sale, transportation, storage, advertising, and trafficking of alcoholic beverages.  *See* KY. REV. STAT. §§ 241.010(3) and 241.060(1).

Urban counties, such as the Louisville/Jefferson County metropolitan area, are required

---

[1] In their complaint in state court, which was later removed to this federal court, the plaintiffs appeared to be asserting not only a violation of their own rights under the Fourth Amendment, but also the rights of their patrons.  They have made no such argument in their motion for summary judgment, however.  Accordingly, this court will deem that argument waived, and will not address it here, except to note that the Thorobred Lounges' legal ability to assert putative claims of Fourth Amendment violations on behalf of their customers and parking lot patrons is tenuous, at best, if not non-existent.  *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498 (1975), and its progeny.

to create the office of urban-county alcoholic beverage control administrator, *see* KY. REV. STAT. 241.220, whose functions "shall be the same with respect to urban-county licenses and regulations, as the functions of the board with respect to state licenses and regulations, except that no regulation adopted by an urban-county administrator may be less stringent that the statutes relating to alcoholic beverage control, or than the regulations of the board." KY. REV. STAT. § 241.050.  Pursuant to statute, the "urban-county administrator, and his investigators, shall have full police powers of peace officers, and their jurisdiction shall be coextensive with such urban-county governments." Ky. Rev. Stat § 241.230(1).  In addition, they "may inspect any premises where alcoholic beverages are manufactured, sold, stored or otherwise trafficked in, without first obtaining a search warrant."  *Id.*[2]

Pursuant to the ordinances promulgated by the Metro Government, any entity which wishes to sell or engage in any business pertaining alcoholic beverages must obtain an appropriate license.  *See* LOUISVILLE CODE OF ORDINANCES § 113.15.  The conditions governing licenses are established by another ordinance, which states, in its pertinent part:

> All licenses granted under this chapter shall be granted subject to the following conditions ...
> (A)     Every applicant procuring a license thereby consents to the entry of the Louisville Metro ABC Government Administrator, or any duly authorized representative of such Administrator, at all hours for the purpose of inspection and

---

[2]An analogous set of statutes, KY. REV. STAT. §§ 241.160, 241.170(1), and 241.190, apply to first-class cities and consolidated local governments.  The Thorobred Lounges collectively hold alcoholic beverage licenses that were issued by the predecessors to the Metro Government, namely the City of Louisville and Jefferson County.  Because those entities haven now merged into their successor entity, the urban-county Metro Government, this court will not express an opinion on the constitutionality of the statutes mentioned in this footnote, except to comment that, in all substantive respects, they are identical to the statutes applicable to urban-county governments that will be analyzed in the body of this memorandum opinion.

> search; consents to the removal from the premises of all things and articles which are had in violation of this chapter or state law or federal law; and consents to the introduction of such things and articles in evidence in any hearing or prosecution that may be brought for such offense.

LOUISVILLE CODE OF ORDINANCES § 113.22(A). The remainder of the ordinance limits the rights of hotel licensees, and proscribes on all licensed premises disorderly, riotous, or indecent conduct, the maintenance of any radio that can receive messages from the Metro Government's police radio station, the sale or keeping of any controlled substances, acts of prostitution or gambling, overcrowding, and any violations of fire regulations. *See* LOUISVILLE CODE OF ORDINANCES § 113.22(B) - (E).

The Thorobred Lounges all hold licenses to sell alcoholic beverages and assert that each of their premises have been entered by agents and employees of the defendants, pursuant to the ordinance and statutes cited above, as a "subterfuge" to conduct improper, warrantless searches of the Lounges' customers, employees, and customers' private vehicles, without the requisite warrant. *See* Verified Complaint, p. 6, ¶ 11 (attached to docket no. 1). They also assert that each premises has been subject to warrantless searches that included "private officers [*sic*, presumably "offices"], files, cabinets, employee lockers, storage rooms, and other such areas." *Id.* at p. 6, ¶ 12. They therefore assert that the statutes and ordinance violate the United States Constitution because they (1) fail to set forth any terms of the certainty and regularity of their application, (2) fail to have a properly defined scope, and (3) do not limit the discretion of the inspecting officers. Accordingly, the Thorobred Lounges assert that they are entitled to a declaration that the statutes and ordinance are unconstitutional and the to entry of an injunction prohibiting their enforcement. The defendants respectfully disagree.

**II.**

The parties are in agreement with respect to most of the legal issues that underpin this litigation. Both sides agree that what is at issue is a type of administrative search, and that the Fourth Amendment's warrant requirement extends to administrative searches. *See New York v. Burger*, 482 U.S. 691, 701 (1987)(citing *Marshall v. Barlow's, Inc.,*436 U.S. 307, 312-13 (1978)). They also agree that holders of licenses pertaining to certain types of "closely regulated" business or industries, which includes those involved in the sale of alcoholic beverages, *see Colonnade Corp. v. United States*, 397 U.S. 72, 77 (1970), have a markedly reduced expectation of privacy with respect to their commercial property, and that the "warrant and probable cause requirement, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application" to such licensees. *Burger*, 482 U.S. at 703.

They also agree that *New York v. Burger, supra*, is the seminal case with respect to the constitutionality of administrative searches, and that the three-part test established by the Supreme Court in *Burger* applies to this case. In *Burger*, the Supreme Court held that a warrantless inspection, even in the context of a pervasively regulated business, will be deemed to be reasonable within the context of the Fourth Amendment only so long as three criteria are met:

> 1. There must be a "'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made[;]"
>
> 2. The "warrantless inspections must be 'necessary to further [the] regulatory scheme[;]'" and
>
> 3. The statute's or ordinance's inspection program, "in terms of the certainty and regularity of its application," must provide a

> constitutionally adequate substitute for a warrant by performing the two basic functions of a warrant:
>
> a. it must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes" and
>
> b. it must "carefully" limit the discretion of the inspecting officers in terms of "time, place, and scope."

*See Burger*, 482 U.S. at 702-3 (internal citations omitted).

Neither party disputes that the first two prongs of the *Burger* test are met, and the plaintiffs do not dispute that the first part of the third prong is also met, because the statutes and ordinance in question make clear to any applicant for an alcoholic beverage license that, if such a license is granted, his property is subject to periodic inspection. Indeed, they could not credibly argue otherwise. As noted above, KY. REV. STAT. § 241.230 states that urban-county alcoholic beverage control administrators may "inspect any premises where alcoholic beverages are manufactured, sold, stored or otherwise trafficked in, without first obtaining a warrant," and LOUISVILLE CODE OF ORDINANCES § 113.22(A) states "[a]ll licenses granted under this chapter shall be granted subject to the following conditions ... (A) Every applicant procuring a license thereby consents to the entry of the Louisville Metro ABC Government Administrator, or any duly authorized representative of such Administrator, at all hours for the purpose of inspection and search."

The only real dispute thus appears to be whether the statutes and ordinance satisfy the second part of the third prong of the *Burger* test – that is to say, whether they "carefully" limit the discretion of the inspecting officers in terms of "time, place, and scope." The defendants assert that they do. The court disagrees.

*Limitations on Place*

The defendants correctly note that the "premises" referred to in KY. REV. STAT. § 241.230(1) is defined by KY. REV. STAT. § 241.010 to mean "the land and building in and upon which any business regulated by alcoholic beverage statutes is operated or carried on." They also correctly note that KY. REV. STAT. § 241.010(7) further states that a "building containing licensed premises" means "the licensed premises themselves and includes the land, tract of land, or parking lot in which the premises are contained, and any part of any building connected by direct access or by an entrance which is under the ownership or control of the licensee by lease or ownership." The court notes, however, that the only section in the Kentucky Revised Statutes in which the phrase "building containing licensed premises" is used is in the list of definitions in KY. REV. STAT. § 241.010. It thus appears to be a definition without specific statutory use and may not be relevant to any evaluation of the limitations putatively placed on the places the inspectors may search and inspect.

The Louisville Code of Ordinances does not contain specific provisions analogous to the statutes, but it does adopt and incorporate by reference all alcoholic beverage control laws and regulations of the Commonwealth. *See* Louisville Metro Ordinance § 113.04. Although these incorporated statutory definitions are arguably broad, the court acknowledges that it is possible (perhaps likely) that they may permissibly be so, given the type of industry regulated. Regardless, the court cannot say that there are no limitations placed on the discretion of the inspecting officers in terms of place, and, because of the type of industry regulated, even a broad, statutory definition of premises may nevertheless impose careful enough limits on the discretion of the inspectors. Where the court disagrees with the analysis of the defendants, is with respect

to the issues of whether there are any limitations placed on the inspecting officers in terms of the *scope* of their inspections, or in terms of the *times* at which the inspections may take place.

*Limitations on Scope*

The defendants assert that inspectors' discretion is limited in scope to inspecting for violations of the alcoholic beverages laws and regulations on the licensed premises. The defendants cite no specific textual limitation that supports this assertion, however, and the court can find none in the statutes or the ordinance. The relevant statute states simply that urban county-administrators and their investigators "may inspect any premises where alcoholic beverages are manufactured, sold, stored or otherwise trafficked in, without first obtaining a warrant." KY. REV. STAT. § 241.230(1). It does not limit, either specifically or generally, the scope of the permissible warrantless inspection to violations of alcoholic beverage control laws or regulations.

The applicable Louisville ordinance states that licensees, solely by virtue of their procurement of licenses, consent to the entry of inspectors "for the purpose of inspection and search." LOUISVILLE CODE OF ORDINANCES § 113.22(A). It does *not* say "for the purpose of inspection and search for violations of the applicable alcoholic beverages laws and regulations." That limitation arguably could be implied, but it is most certainly not stated expressly. Moreover, the relevant ordinance also states that licensees consent to the removal from the premises of all things "which are had in violation of this chapter or state law or federal law," and then further proscribes on the premises nuisances; disorderly, riotous, or indecent conduct; certain radio receiving equipment; controlled substances; prostitution; gambling; and violations of the fire codes. It thus appears to permit inspectors to inspect and search for evidence of a vast

array of crimes and other code violations, not just violations pertaining specifically to alcoholic beverages (*e.g.,* Sunday sales (where applicable) and sales to minors).[3] It is unclear whether ABC inspectors (*i.e.,* the police) may use the statute at issue to enter a bar to search for violations of building code ordinances, child labor laws, the Americans with Disabilities Act, or any other law in addition to violations of alcoholic beverage licensing laws. There certainly is no express prohibition against them doing so. Indeed, there are no limits of any kind specifically expressed. As written, there is nothing to prevent the ABC inspectors/policemen from using LOUISVILLE CODE OF ORDINANCES §113.22(A) and KY. REV. STAT. § 241.230 to enter a bar to search primarily for narcotics in the owner's private office, an act which would otherwise require a warrant. Consequently, the court cannot say that there are any "careful limitations" on the scope of the investigators' discretion, either on the face or as applied.

*Limitations on Time*

With respect to the times at which inspections may take place, defendants do not argue that the ordinance and statutes place no limits on the discretion of the inspectors. The statutes are silent on this issue. The relevant ordinance permits inspections "at all hours." In *Burger,* the Supreme Court held the challenged statute to be constitutionally permissible in part because it limited inspections to "the regular and usual business hours" of the regulated business. The

---

[3]This is particularly significant, because plaintiffs have included with their motion transcripts of the depositions of William Schreck, the Louisville/Jefferson County Metropolitan Government's putative Alcoholic Beverage Control ("ABC") Administrator, whose official title is Director of the Department of Inspection, Permits & Licenses, and two ABC inspectors. All testified that the inspectors are employed by the police department and take no direction or guidance from Mr. Schreck. Rather, they merely accept referrals from him. The inspectors therefore appear not to be conducting administrative inspections exclusively, but operating as police officers, as well. The defendants do not challenge any of the referenced testimony.

business in *Burger* was a vehicle dismantling business, however, not a bar.  It goes without saying that, although junkyards are also closely regulated enterprises, what is an appropriate limitation on inspections for that type of business might not be appropriate for bars.

In *Kentucky Restaurant Concepts, Inc. v. City of Louisville,* 209 F. Supp. 2d 672, 691 (W.D. Ky. 2002), the Chief Judge of this judicial district analyzed a portion of a local ordinance pertaining to the licensing of adult cabarets, which was similar to the ordinance at issue here. That ordinance stated:

> Applications for or granting of a license according to this section is deemed to permit periodic inspections of the public areas of any establishment requiring a license under this subchapter for the purpose of verifying compliance with the terms and conditions of this subchapter.

*Id.* (citing Louisville Ordinance 111.004(E) and (K)(6).  The court deemed that ordinance unconstitutional because it placed no limitation on the time of searches.  The court went on to note that the mere inclusion of the phrase "at reasonable times" with respect to when inspections may be held would cure the defect.  *Id.*  A subsequent Sixth Circuit decision, however, called into question the curative powers of the phrase "at reasonable times" when evaluating an township's resolution pertaining to health and safety inspections of adult cabarets, *see Deja Vu of Cincinnati, LLC v. Union Township Board of Trustees,* 326 F.3d 791, 805 (2003).  That panel stated that resolution permitting health and safety inspections at adult caberets, at "reasonable times" was too vague a temporal limitation on the discretion of the inspecting officers to likely pass constitutional muster under *Burger*.  *Id.* at 805-6.  Consequently, although precisely *what* temporal limitation might be appropriate with respect to the inspection of alcoholic beverage license holders is unclear, it *is* clear from the governing body of case law that some temporal limitation is required.  "At all hours" will not suffice.

-10-

**III.**

After analyzing the statutes and ordinance called into question by the plaintiffs, the court is somewhat surprised that they have not been previously challenged in any meaningful way. The *Burger* decision has been settled law for eighteen years, and its method of analyzing the constitutionality of statutory or regulatory provisions regarding warrantless administrative searches is, or should be, commonly known. Neither KY. REV. STAT. § 241.230 nor LOUISVILLE CODE OF ORDINANCES § 113.22 imposes any "careful limitations" on the discretion of urban-county alcoholic beverage control administrators, or their inspectors. As such, they do not provide constitutionally adequate substitute for a search warrant. This, coupled with the court's understanding that inspections and searches apparently are being performed not by civilian, administrative employees, but by police officers reporting to that department's chain of command, makes the lack of a warrant or any meaningful substitute even more troubling.

The court is inclined to issue an order stating that, until the statute and ordinance are revised to comply with the requirements of the Fourth Amendment by comporting with the analysis of *Burger* and its progeny, the defendants should be enjoined from enforcing or acting in reliance on them. Out of an abundance of caution, the court will first hold a hearing and allow the parties to argue their respective positions before taking such action. In the meantime, the court will grant the plaintiffs' motion for summary judgment.

DATE:

cc: counsel of record

-12-